# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

LULA M. LEWIS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C08-3004-MWB

**REPORT AND RECOMMENDATION**

## *I. INTRODUCTION*

The plaintiff Lula M. Lewis seeks judicial review of a decision by an administrative law judge ("ALJ") denying her application for Title II disability insurance benefits. Lewis claims the ALJ erred in rejecting her subjective complaints, failing to find her presumptively disabled under the Listings, failing to find her disabled under the Medical-Vocational Guidelines or "Grids," and finding she could return to her past relevant work. (*See* Doc. No. 10)

## *II. PROCEDURAL AND FACTUAL BACKGROUND*
### *A. Procedural Background*

On October 9, 2003, Lewis protectively filed an application for disability insurance benefits, alleging a disability onset date of March 20, 1992. (R. 60-64). Lewis claims that prior to her date last insured of December 31, 1997, she became disabled due to "knee problems, carpal tunnel, [and] sometimes back pains." (R. 76) She claims these impairments limited her ability to stand, bend, and stoop for long periods of time, in particular on concrete floors. (*Id.*)

Lewis's application was denied initially and on reconsideration. (*See* R. 44A-52) Lewis requested a hearing, and a hearing was held on June 8, 2006, before Administrative Law Judge ("ALJ") Thomas M. Donahue. (R. 218-42) Lewis was represented at the hearing by attorney Jerry Schnurr. Lewis testified at the hearing, and Vocational Expert (VE) Vanessa May also testified. On December 29, 2006, the ALJ issued an unfavorable decision, finding that through her date last insured, Lewis retained the residual functional capacity to return to her past relevant work as a production machine tender, and she therefore was not disabled prior to her date last insured. (R. 11-20) Lewis appealed the decision, and on December 7, 2007, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. (R. 7-9)

Lewis filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. (Doc. No. 2) In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. Lewis filed a brief supporting her claim on May 21, 2008. (Doc. No. 10) The Commissioner filed a responsive brief on July 15, 2008. (Doc. No. 11) Lewis did not file a reply brief. The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Lewis's claim for benefits.

### B. Factual Background

#### 1. Introductory facts and Lewis's hearing testimony

Lewis's last insured date was December 31, 1997. Lewis stated she failed to file a claim for disability insurance earlier because she kept thinking she would return to work. (*See* R. 222, 226)

Lewis was born in 1945, making her sixty years old at the time of the ALJ hearing. She graduated from high school in 1964. At the time of the hearing, she was 5'6" tall and weighed about 340 pounds.

Lewis worked at some type of industrial plant from 1973 to March 1992, when the plant closed and she was laid off. She ran different types of machines, cutters, and stampers. (R. 234) Had the plant remained open, she would have continued working. After she was laid off, she took a clerical skills class at a community college to learn to type and use a computer, but she never used a computer after that time. She looked for work through a job service, but her typing speed was not fast enough for them to find work for her. (R. 222-24)

Lewis stated she "probably" became disabled in about 1995, when she was experiencing a lot of pain in her knees, legs, and ankles, and she was unable to walk very far. (R. 222-23) She started having problems with her left knee when she strained the knee in about 1990. Doctors diagnosed her with a strain of the medial collateral ligament. (R. 224) According to Lewis, doctors have recommended she have a knee replacement. (R. 238)

In January 1998, Lewis stepped on a toothpick, causing some pain in her heel with weight-bearing. Before that time, she could stand on a hard surface for up to an hour at a time. Since her heel injury, she can only stand on a hard surface for fifteen to thirty minutes at a time. (R. 156, 226-27)

Lewis stated she also had problems sitting prior to 1997. She could sit for about an hour before she would have to get up due to discomfort, and she sometimes had to have help to get up out of a chair. (R. 227-28) She also had problems with pain when she would bend or kneel, and if she knelt down she had problems getting back up. Climbing stairs caused her back to hurt, and she had difficulty lifting her legs to get onto a bus, for

example. (R. 229-31) Currently, she has problems getting in and out of a bathtub, so she takes showers. (R. 232)

At times, Lewis had problems gripping and holding onto objects. When the weather changed, she would become stiff and experience numbness in her arms and hands. According to her, she was diagnosed with carpal tunnel syndrome, and she currently wears a splint on her right wrist at night. She started wearing the splint two or three years before the ALJ hearing. (R. 229-30) Lewis opined that in 1997, she could lift about fifteen pounds, but only occasionally. (R. 230) She stated that in 1997, she could not have done the type of work she did at the plant in 1992, because she was having trouble with her hands and the job required a lot of handling. (R. 235)

Lewis had problems sleeping in 1997, due to pain. She estimated she probably slept five or six hours a night. (R. 232)

Lewis was able to do her own housework in 1997, although sometimes she could only vacuum for ten or fifteen minutes at a time before she would have to stop and rest for fifteen minutes. She had a high chair to sit on in the kitchen while she was cooking or washing dishes. If she stood for fifteen minutes, she would have to go lie down. She used a brush with a long handle to clean the tub and toilet. She did most of her own grocery shopping, and could spend thirty to forty-five minutes shopping if she leaned on a cart. (R. 232-34)

Before Lewis worked at the industrial plant, she worked as a nurse's aide at a nursing home for two years, and she was a laundry worker for several years prior to that. She opined that in 1997, she would not have been able to do either of these types of work because both jobs involved a lot of lifting. (R. 237)

## 2. *Lewis's medical history*

The record contains very little relevant medical history. Much of the evidence in the record concerns testing and examinations for medical conditions unrelated to Lewis's disability claim.

As noted above, Lewis stepped on a toothpick in January 1998, that broke off in her foot. The piece of toothpick was removed, and she was treated with Silvadene and an antibiotic, with instructions to soak her foot daily. (R. 166)

On September 20, 2000, Lewis saw Janet Secor, D.O. for complaints of left knee pain. Lewis reported that the pain had been present for many years, bothering her in varying degrees, off and on, but worsening within the previous week. Pain increased with any type of activity. Notes indicate Lewis had not been taking any medication for the pain. The doctor noted some crepitus on flexion and extension in both knees, worse on the left, but no swelling or erythema was noted. (R. 184) X-rays were taken of her left knee that revealed "[m]oderate degenerative changes of the medial left knee joint compartment" with "associated osteophytes." (R. 192) Dr. Secor recommended Lewis see a specialist about her knee, due to the degenerative changes observed in the x-rays. (R. 184) When Lewis saw the orthopedic specialist, James D. Wolff, M.D., he recommended she exhaust all conservative treatment options before undergoing knee replacement surgery. Lewis reported significant relief with Naproxen, and the doctor recommended she continue taking Naproxen for pain. (R. 183)

On August 20, 2001, Lewis saw Dr. Secor to discuss whether she should apply for disability. Lewis reported that she had not worked since her layoff from her job in 1992, "except for volunteer-type things." (R 180) She described pain and other problems with her knees, and stated she could stand for only about two hours before she would have to sit down due to pain. She stated she could not walk for any distance at all due to her knee problems. She also reported "some shoulder pain but no wrist pain," and some "problems

5

with her ankles when she walks." (*Id.*) Dr. Secor opined Lewis might qualify for disability "based on the knee and ankle problems," but likely would not qualify for disability based solely on her upper extremity problems. She recommended Lewis consult with Job Service to see what types of positions she might qualify for, and to discuss whether she would qualify for disability. (R. 179)

On January 24, 2003, Lewis saw Dr. Secor with complaints of, among other things, knee pain, and numbness and tingling in her right hand. The doctor noted no crepitus with movement of Lewis's knees and recommended no treatment. She recommended Lewis try wearing a carpal tunnel splint to see if it would relieve her hand symptoms. (R 176)

Lewis next saw a doctor on May 13, 2003, and reported her carpal tunnel symptoms had improved. She was directed to continue using the splint. (R. 174)

On August 29, 2003, Lewis saw Jeffrey S. Foreman, O.D. to replace her eyeglasses. Dr. Foreman observed that while Lewis was in his office, she had no problems with sitting, walking, or standing. (R. 206)

On September 10, 2003, Lewis returned to see Dr. Wolff with reports of worsened knee pain to the point that Naproxen no longer was relieving her pain. Lewis's husband accompanied her to the appointment, and he reported that Lewis's knee pain caused her difficulty getting around. He suggested Lewis might need a wheelchair, and he asked for a handicapped parking sticker for Lewis. The doctor noted it was difficult to examine Lewis's knees due to her obesity; she was 5'7" tall and weighed 358 pounds. (R. 203-04) X-rays were taken of Lewis's knees, and Dr. Wolff diagnosed her with "severe osteoarthritis to her knees, bilaterally, multi-compartmental type." (R. 204) He treated Lewis with Cortisone injections to both knees, which provided her with significant pain relief. She was able to walk more easily and her limp was diminished after the injections. He offered to repeat the injections at four- to six-month intervals, and noted if the

injections stopped working, then she might be a candidate for total knee replacement. He also recommended she lose weight. (*Id.*)

On May 24, 2006, Samir R. Wahby, M.D. reviewed Lewis's records and x-ray films, and opined Lewis would be limited to sedentary work, at most. He further opined her condition would continue to worsen, and she would continue to require a cane for ambulation. (R. 209)

### 3. *Vocational expert's testimony*

The ALJ asked VE Vanessa May to consider a female, fifty-two years of age, with a high school education and Lewis's past relevant work, with the following restrictions:

> Lifting up to 20 pounds occasionally, ten pounds frequently. Sitting up to two hours at a time for at least six of an eight hour day. Standing up to two hours at a time or at least six of an eight hour day. Walking up to two blocks. Only occasional climbing of ramps and stairs, only occasional balancing, stooping, kneeling, crouching, crawling and bending.

(R 239) The VE stated this individual would be able to perform Lewis's past relevant work, which the VE characterized as light, according to Lewis's descriptions of her jobs. (*Id.*) The individual would have no transferable skills, but also could perform a wide range of unskilled light work, including, for example, order caller, office helper, and arcade attendant. (R. 239-40)

The ALJ next asked the VE to consider the same individual with the following limitations:

> Lifting 20 pounds occasionally and ten pounds frequently. Sitting and standing up to two hours at a time for at least six of an eight hour day in both of those positions. Walking up to two blocks. Only occasional climbing of ramps and stairs. Only occasional balancing, stooping, kneeling, crouching and crawling. No climbing of ladders, ropes or scaffolds. The [individual] would need frequent unscheduled rest breaks and

7

> also due to chronic pain syndrome, depression, mental impairment or any other reason the [individual] would miss three or more days work per month.

(R. 240) The VE stated this individual would be unable to perform any of Lewis's past relevant work or any other type of work, due to the absences and unscheduled breaks. (R. 240-41)

### 4. *The ALJ's decision*

The ALJ indicated Lewis must establish disability on or before December 31, 1997, her date last insured for purposes of her disability claim. (R. 14) He found Lewis had not engaged in substantial gainful activity from her alleged disability onset date of March 20, 1992, through her date last insured of December 31, 1997. (R. 16) He found Lewis to have a severe combination of impairments consisting of "obesity, hypertension and bilateral degenerative joint disease of the knees." (R. 16) However, he further found that through her date last insured, Lewis did not have any impairment or combination of impairments that met the Listing level of severity. (R. 17)

The ALJ found that through Lewis's date last insured, she had the following residual functional capacity:

> [T]o perform work which requires lifting 20 pounds occasionally and 10 pounds frequently; sitting up to 2 hours at a time for a total of 6 hours in an 8-hour workday; standing 2 hours at a time for a total of 6 hours in an 8-hour workday; walking up to 2 blocks; occasionally climbing stairs as well as occasionally balancing, stooping, kneeling, crouching, crawling and bending.

(R. 18)

The ALJ found that although Lewis's medically-determinable impairments reasonably could have produced her alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R.

8

19) He noted that in the more recent past, Lewis had reported daily activities that included "light housekeeping/daily home chores, carrying and lifting light things, cooking, climbing stairs with a handrail, driving, bending, standing, walking and going shopping." (*Id.*) In addition, Lewis had reported significant benefit from conservative medical treatment. (*Id.*)

Giving weight to the VE's testimony that, as Lewis had described it, she had performed her job as a production machine tender at a level requiring only light physical demands, the ALJ concluded that as of her date last insured, Lewis retained the residual functional capacity to perform her past relevant work as a machine as a production machine tender, as the job was actually performed. He therefore concluded Lewis was not disabled as of her date last insured. (R. 19-20)

### III. DISABILITY DETERMINATIONS, THE BURDEN OF PROOF, AND THE SUBSTANTIAL EVIDENCE STANDARD

#### A. *Disability Determinations and the Burden of Proof*

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *Hillier v. Social Security Admin.*, 486 F.3d 359, 363 (8th Cir. 2007);

*Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, *supra*, 2007 WL 2593631 at *2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287, 98 L. Ed. 2d 119 (1987)).

The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th

Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)."); *accord Kirby, supra*, 2007 WL 2593631.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley*, 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon, supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that

11

there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

### B. *The Substantial Evidence Standard*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433

F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page* 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline, supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting

13

*Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

On the issue of an ALJ's determination that a claimant's subjective complaints lack credibility, the Sixth and Seventh Circuits have held an ALJ's credibility determinations are entitled to considerable weight. *See, e.g., Young v. Secretary of H.H.S.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir. 1987)); *Gooch v. Secretary of H.H.S.,* 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075, 108 S. Ct. 1050, 98 L. Ed. 2d. 1012 (1988); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort or other disabling limitations simply because there is a lack of objective evidence; instead, the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *See Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900

F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). As the court explained in *Polaski v. Heckler:*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1) the claimant's daily activities;
> 2) the duration, frequency and intensity of the pain;
> 3) precipitating and aggravating factors;
> 4) dosage, effectiveness and side effects of medication;
> 5) functional restrictions.

*Polaski*, 739 F.2d 1320, 1322 (8th Cir. 1984). *Accord Ramirez v. Barnhart*, 292 F.3d 576, 580-81 (8th Cir. 2002). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

## IV. DISCUSSION

Lewis claims the ALJ erred in several respects. (*See* Doc. No. 10) However, the court finds a point-by-point analysis of Lewis's assertions of error by the ALJ is not necessary here. In a nutshell, Lewis has failed to carry her burden to show she was disabled prior to her date last insured. The sole evidence in the record that she was disabled prior to her date last insured is a few very brief statements she made during the ALJ hearing, indicating she did not believe she could have returned to her past relevant work by 1995. This falls far short of proving she was unable to perform any type of substantial gainful activity.

Lewis failed to provide any medical evidence to establish that she was disabled prior to her date last insured. The regulations place the onus on the claimant to bring to the

agency's attention "medical and other evidence that [the agency] can use to reach conclusions about [the claimant's] medical impairment(s) and, if material to the determination . . ., its effect on [the claimant's] ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). Lewis failed to provide substantial evidence upon which a disability finding could be made. Her statements about her condition prior to her date last insured, standing alone, cannot form the basis for a disability finding. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

Although the evidence suggests Lewis may have become disabled as the years have passed, the record simply does not contain substantial evidence that she was disabled prior to her date last insured.

## V. CONCLUSION

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation in accordance with

---

[1] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.

28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be affirmed.

**IT IS SO ORDERED.**

**DATED** this 7th day of November, 2008.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT