# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| LULA M. LEWIS,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C 08-3004-MWB<br><br>**ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

On October 9, 2003, plaintiff Lula Lewis filed an application for Title II disability insurance benefits. In her application, Lewis alleges a disability onset date of March 20, 1992, which is before her last insured date of December 31, 1997. The causes of her disability, according to Lewis, are "knee problems, carpal tunnel, [and] sometimes back pains," which limit her ability to engage in "standing, bending [and] stooping for long periods of time," particularly on concrete floors. R. at 76. Lewis's application for benefits was denied initially and after reconsideration. Lewis requested a hearing, and an Administrative Law Judge (ALJ) held a hearing for Lewis's claim on June 8, 2006. The ALJ issued a decision on December 29, 2006, which also denied Lewis's request for benefits. On December 7, 2007, the Appeals Council denied Lewis's request to review the ALJ's decision, and therefore the denial of benefits was a final decision of the Commissioner.

    On January 16, 2008, Lewis filed a complaint in this court seeking review of the Commissioner's decision. Doc. No. 2. The undersigned referred the case to Chief United

States Magistrate Judge Paul A. Zoss for a report and recommendation. On November 7, 2008, Judge Zoss issued a report and recommendation, which recommends that the undersigned affirm the Commissioner's decision to deny benefits to Lewis. Doc. No. 13. Judge Zoss found that Lewis failed to show that she was disabled prior to her last insured date, because the only evidence supporting her claim was her own statements about her condition. However, Judge Zoss recognizes that Lewis may have become disabled since her last date insured of December 31, 1997. Neither Lewis nor the Commissioner filed objections to Judge Zoss's report and recommendation.

## II. LEGAL STANDARDS

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the

district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, the court reviews the magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In applying this standard to review Judge Zoss's report and recommendation, the court must also be mindful of the standards upon which an appealed Commissioner's decision is reviewed. If appealed, the court reviews the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Page*, 484 F.3d. at 1042 (quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). Therefore, the court will consider whether Judge Zoss's determination that the ALJ properly denied benefits is clearly erroneous, while keeping in mind that the ALJ must have substantial evidence in support of his factual findings.

### III. LEGAL ANALYSIS

The Commissioner decided to deny Lewis benefits despite Lewis's testimony, provided during the hearing, that she had pain and other symptoms that prevented her from working.[1] In the hearing, Lewis first claimed that she "had trouble with [her] knee before

---

[1] Judge Zoss characterized this testimony as "a few very brief statements… indicating she did not believe she could have returned to her past relevant work by 1995."

(continued…)

4

[she was] laid off [in 1992]." R. at 221. However, Lewis later claimed that she became disabled "[p]robably about 1995." R. at 222. Specifically, Lewis asserted that she was having problems, in 1995, with her hands, legs and knees. R. at 224. In support of her statements about these problems, Lewis first relied on her medical records. The records detail an incident in 1990, where Lewis received treatment for a knee injury. In the records, Lewis's injury was diagnosed as a strained MCL in her left knee. R. at 217. Lewis explained that the knee injury occurred when she "walked down some steps and kind of twisted it, my left [knee]." R. at 225. Lewis's attorney also noted that the medical records recognized Lewis's weight in January of 1994 as 340 pounds. *Id*. The remainder of Lewis's testimony consisted of additional statements concerning her experience with pain and other symptoms[2] before and after her last day insured. Lewis also testified that in 1997 she would have been unable to perform the tasks required by jobs she had held in the past and provided evidence that she may have had arthritis.[3] Lastly, Lewis claimed

---

[1](…continued)
Doc. No. 13.

[2] For example, Lewis explained that changes in the weather caused her to stiffen up; that she had numbness in her arms and hands; that she had problems with her legs when she tried to stand up; that she could not pick things up very well with her hands; that a doctor said she had carpal tunnel syndrome, and Lewis explained that she has worn a splint on her right hand, at night, for the past few years (not before her last date insured); that she could only lift 15 pounds in 1997, but not on a regular basis; that she could not easily climb stairs, had to use a rail when climbing stairs, and that climbing stairs made her back hurt; that she had problems sleeping; and that she had difficulty with household chores and grocery shopping.

[3] On May 24, 2006, Dr. Samir Wahby, M.D. examined Lewis's medical records and x-ray films and opined that she suffered from severe arthritis. R. at 209. Dr. Wahby also claimed that the x-rays showed him that the arthritis had "been ongoing for at least
(continued…)

that her leg condition had become worse since 1997. Judge Zoss found that the statements "fall[] far short of proving [Lewis] was unable to perform any type of substantial gainful activity." Doc. No. 13.

The Code of Federal Regulations (C.F.R.) provides guidance in determining the usefulness of Lewis's testimony. The C.F.R. explains that, "[i]n determining whether [a claimant is] disabled, [ALJ's] consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). "However, statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled." *Id.* Instead, the C.F.R. states that:

> there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled. In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, we will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how [the claimant's] symptoms affect [the claimant].

*Id.* The Eighth Circuit Court of Appeals has explained that an "adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal

---

[3](…continued)
ten years." *Id.* In addition, Dr. Wahby stated that "Lewis would have a maximum sustained work capability limited to sedentary work at most." *Id.*

observations." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Instead, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id*. In *Polaski*, the court more specifically explained:

> The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them…. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.

*Id*. In relation to this framework, the Eighth Circuit Court of Appeals has found that "[t]he ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (2004)(quoting *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)).

The bulk of Lewis's evidence was "statements about [her] pain or other symptoms." *See Id*. Lewis produced medical records concerning a knee injury, but the injury documented in the records took place in 1990, five years before Lewis claims to have been disabled. Additionally, the record lacks support for the idea that the specific injury persisted for five years or at all. The lack of documentation and diagnosis to support Lewis's claimed disability does not appear to be due to the ALJ's failure to develop Lewis's medical history pursuant to 20 C.F.R. § 404.1512(d), or even Lewis's failure to provide the appropriate medical evidence pursuant to C.F.R. § 404.1512(c). Instead, the lack of record appears to be simply the result of a delayed application, filed several years

7

after the last insured date—when asked why she did not pursue a claim earlier, Lewis explained: "I thought I was going to find another job." R. at 222. Had Lewis pursued her claim earlier, she may or may not have received the requisite documentation of a disability.[4]

The court recognizes, as Judge Zoss did, that Lewis may *now* have a disabling condition. However, the court must evaluate each case with the record it has before it. Despite Lewis's commendable work history[5] and worsening knee problem,[6] the court easily finds substantial evidence on the record as a whole to support the ALJ's finding that Lewis was not disabled prior to her last day insured. *See Page*, 484 F.3d at 1042.

## IV. CONCLUSION

The court, having found that the ALJ's determination to deny Lewis benefits is supported by substantial evidence, finds that Judge Zoss's recommendation to affirm the Commissioner's decision is not clearly erroneous. Therefore, the court **accepts** Judge Zoss's report and recommendation and **affirms** the Commissioner's decision that Lewis is not disabled.

---

[4] The court acknowledges, however, that the vocational expert who testified at the hearing found that Lewis could have performed her past relevant work as it was described by Lewis. R. at 20.

[5] Lewis has been employed by a cleaner, worked as a nurses aid, and most recently, worked in an industrial plant from 1973 to 1992.

[6] Lewis testified that she may need a knee replacement.

**IT IS SO ORDERED.**

**DATED** this 8th day of December, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA